[Civ. No. 10076. Second Appellate District, Division Two.—September 16, 1935.]

M. G. NORTON, Appellant, v. LYON VAN & STORAGE CO. et al., Respondents.

M. G. Norton, *in pro. per.*, for Appellant.

Williamson & Musick, Gwyn S. Redwine and Frank H. Ferguson for Respondents.

FRICKE, J., *pro tem.*—Appeal by plaintiff from a judgment following the granting of defendants' motion for a nonsuit.

For simplicity the respondent companies, one being the successor of the other, will be referred to herein merely as the "storage company". Appellant stored certain furniture and other personal property with the storage company on about June 2, 1930, under an agreement whereby appellant, in addition to a handling charge of $4 and a cartage charge of $5, agreed to pay a storage rate of $4 per month. Shortly thereafter a warehouse receipt was sent by mail to appellant, whose address was then 2316 West Tenth Street, Los Angeles. Nothing was paid by appellant to respondents for a period of nearly eighteen months, and no attention was paid by him to the bills sent him during this period. On November 14, 1931, the storage company notified appellant that unless payments were made his goods would be sold, and thereupon appellant on December 9, 1931, made a payment of $20 on the account. No further payments being made, the storage company on May 2, 9 and 16, 1932, published a notice of sale of the property for unpaid storage in the Los Angeles Daily Journal, and sent a copy of this notice by registered mail to appellant at 2316 West Tenth Street, Los Angeles, that being the last address of appellant known to respondents. The notice was returned by the postoffice with the notation, "Moved. Left no address." On May 26, 1932, the goods were sold by the

storage company for $95.31, the amount of the unpaid storage charges, to respondent Burns, an employee of the storage company, but were not removed from the warehouse and have remained there at least up to the taking of this appeal. On July 5, 1932, appellant wrote the storage company requesting a statement of his account, and two days later received a reply advising him that his goods had been sold to pay an unsatisfied storage bill of $95.31. Thereafter appellant went to the warehouse in person. He was informed that he could secure a return of his goods if he would pay the storage charges and costs and expenses of sale. Appellant secured a check for $96, signed by his sister and payable to his order, and went to a branch office of the storage company but when informed by Mr. Burns, the company's representative, that the matter could not be adjusted without authority from the Hollywood office, appellant picked the check up from the counter where he had previously laid it and left taking the check with him.

Appellant claims an accord and satisfaction of the item of $95.31 as the result of a subsequent conversation with Mr. Burns. As it appears from the declaration of Burns to appellant that he could not make any adjustment without the authority of the Hollywood office of the storage company and as there is a total absence of proof that Burns had authority in the matter, the transaction with Burns, assuming but not conceding that it would amount in law to an accord and satisfaction, was not binding upon the company.

Appellant also claims that his alleged tender of the $96 check extinguished the obligation then due. There is no showing that, at the time of the alleged tender, the amount due was $96 and not some other sum. Since it appears that the amount due on May 26, 1932, was $95.31 and the storage rate agreed upon was $4 a month, and the alleged tender was made on July 18, 1932, it seems evident that $96 was less than the amount due and, as concerns the subject of extinguishment of an obligation "an offer of partial performance is of no effect". (Civ. Code, sec. 1486.) Furthermore, to extinguish an obligation for the payment of money there must not only be an offer of payment but also actual payment or the deposit of the amount in a bank and notice thereof to the creditor. (Civ. Code, sec. 1500.)

Subsequently appellant made payments of $25, $15 and $10, but no further payments were ever made. On March 30, 1933, appellant brought this action for the possession of the property and various items of alleged damage.

Appellant claims error because of the sustaining of a demurrer without leave to amend as to the second cause of action in his third amended complaint wherein he claims damages under the claim that, upon learning of the sale of his goods, he suffered various illnesses and impairments of health. Appellant cites no authority nor are we apprised of any authority for the recovery of damages which are neither the natural result of the sale of his property nor capable of being reasonably anticipated by the defendants.

Under the Warehouse Receipts Act (Act 9059, Gen. Laws) the storage company had a lien for storage charges. These charges not being paid, the warehouseman, having given notice of the contemplated sale of the property, as required by section 33 of that law, lawfully sold the stored property. The company then offered to surrender its title if appellant would pay the past due charges and expenses of sale. Had this offer not been accepted the absence of title in appellant would have been a complete defense to the action. Conceding that appellant did accept the offer, it is obvious that he did not comply with its terms but has both failed and refused to pay any of the storage charges incurred prior to the date of sale or all of the storage charges subsequent thereto, as noted above, and his claimed right to possession, in view of his complete failure to repurchase the property, had no existence.

Appellant's argument that no legal notice of the sale was sent him is answered by section 33 of the act, which states that "Such notice shall be given by delivery in person or by registered letter addressed to the last known place of business or abode of the person to be notified." Actual receipt of the notice is not required. The legislature quite evidently was aware of the fact that owners of stored property frequently change their places of business and abode and cannot personally be served, and hence provided for service by registered mail in such cases. Appellant's agreement for storage was made in the light of the statute, and he cannot well complain of the nondelivery of the notice because he failed to advise the storage company when he changed his address.

■ Appellant, though in some respects apparently relying upon provisions of the Warehouse Receipts Act, also contends that it is unconstitutional. No satisfactory argument favoring this contention is advanced, and we can see no reason for not sustaining the constitutionality of the act so far as the provisions affecting this action are concerned. ■ Even in the absence of the Warehouse Receipts Act, a depositary for hire has a lien for storage charges and expenses of sale (Civ. Code, secs. 1856, 3051), and in the event of nonpayment may sell the property deposited. (Civ. Code, sec. 3052.)

■ Under one of appellant's theories, it is suggested that the sale was unauthorized and void. Even if tenable this would not avail appellant, since under this theory he obviously shows no right to possession of the property by reason of his failure to pay the charges provided for in the original storage agreement.

■ Appellant's claim of bias and prejudice of the trial judge because he had been a member of the legislature which enacted the Warehouse Receipts Act is without merit, and the record warrants only the conclusion that the trial judge presided with fairness, ability and patience.

The judgment is affirmed.

Wood, J., and Crail, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1935.